IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KATIE MURPHY,**<br><br>      PLAINTIFF,<br>  v.<br><br>**TIKTOK, INC. and BYTEDANCE, INC.**<br><br>      DEFENDANT. | Case No. |

**CLASS ACTION COMPLAINT**

Plaintiff, Katie Murphy, on behalf of themselves and all others similarly situated, files this complaint against Defendants TikTok, Inc. ("TikTok") and ByteDance, Inc. ("ByteDance") (Collectively "Defendants") to seek redress for the Defendants' conduct. Plaintiff alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys, and states as follows:

**NATURE OF CASE**

1. Defendants operate a social media networking app, TikTok, that is used by tens of millions of Americans every day, including millions under the age of 18. Tiktok allows users to upload, share, and view videos and other content. However, what Defendants do not make known is that the TikTok app contains software that allows the Defendants to engage in routine surveillance of the users web browsing

and information searched and viewed. This surveillance goes above and beyond what a typical consumer would be aware is possible and is a gross violation of privacy rights. As a result, Defendants have violated the rights of Plaintiff and the Class and are liable for damages.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as well as the Federal Wire Tap Act, 18 U.S.C. §§ 2510 et seq.

3. This Court also has subject matter jurisdiction over this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Classes are citizens of states in the United States and the foreign Defendants are subjects or citizens of foreign states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claim occurred in this District. Moreover, Plaintiff resides in this District.

## PARTIES

6. Plaintiff Katie Murphy ("Plaintiff") was a resident and citizen of Illinois during all times relevant to this complaint.

7. Defendant TikTok, Inc. is corporation organized under the laws of California, with its principal place of business located in California.

2

8. Defendant ByteDance, Inc. is corporation organized under the laws of Delaware, with its principal place of business located in California. ByteDance, Inc. is a wholly owned subsidiary of ByteDance, Ltd., a Cayman Islands corporation.

## FACTS

9. TikTok is a popular video-sharing and social networking service, owned by the Chinese tech company ByteDance.

10. TikTok has approximately 100 million monthly active users in the United States. Of these users, around 57% are under the age of 18. This is a significant portion of the overall user base, showing the platform's popularity among younger generations. The majority of TikTok users are aged 18 to 24, and 32% of TikTok users are between the ages of 13 and 17.[1]

11. However, there are significant and increasing security and privacy concerns with TikTok and ByteDance. The Senate has been looking into TikTok for some time now, and recently unanimously passed the No TikTok on Government Devices Act.[2] The legislation was introduced by U.S. Senator Marco Rubio (R-FL) and is known as the Averting the National Threat of Internet Surveillance, Oppressive Censorship and Influence, and Algorithmic Learning by the Chinese Communist

---

[1] TikTok by the numbers (2023): Stats, Demographics & Fun Facts, Omnicore Agency (2023), https://www.omnicoreagency.com/tiktok-statistics/ (last visited Jan 25, 2023).

[2] Fung, B. (2022) *Senate passes legislation to ban tiktok from US government devices | CNN business*, *CNN*. Cable News Network. Available at: https://www.cnn.com/2022/12/15/tech/senate-tiktok-ban-devices/index.html (Accessed: January 25, 2023).

3

Party Act (ANTI-SOCIAL CCP Act).[3] This would prohibit certain individuals from downloading or using TikTok on any government-issued device.[4]

12. Additionally, at least 25 US states have banned the TikTok app on government devices, including North Carolina, Wisconsin, Ohio, Texas, Alabama and many others.[5] FBI director Chris Wray warned in December 2022 that TikTok could be used for espionage operations and President Joe Biden signed a bill in December preventing federal employees from using the app on government devices.[6]

13. TikTok has been at the center of a heated debate over its ties to the Chinese government.[7] The app and its parent company, ByteDance, have been accused of collecting more data than other social media companies and of allowing Chinese authorities to access that data.[8]

---

[3] *Rubio, Gallagher Introduce Bipartisan Legislation to Ban TikTok* (no date). Available at: https://www.rubio.senate.gov/public/index.cfm/2022/12/rubio-gallagher-introduce-bipartisan-legislation-to-ban-tiktok (Accessed: January 25, 2023).

[4] Weaver, A. (2022) *Senate votes to ban tiktok use on government devices*, *The Hill*. The Hill. Available at: https://thehill.com/policy/technology/3775845-senate-votes-to-ban-tiktok-use-on-government-devices/ (Accessed: January 25, 2023).

[5] Bhaimiya, S.*Here's a full list of the US states that have introduced full or partial TikTok bans on government devices over mounting security concerns*, *Business Insider*. Business Insider. Available at: https://www.businessinsider.com/tiktok-banned-us-government-state-devices-2023-1 (Accessed: January 25, 2023).

[6] Id.

[7] *TikTok's ties to China: Why concerns over your data are here to stay* (2022) *The Guardian*. Guardian News and Media. Available at: https://www.theguardian.com/technology/2022/nov/07/tiktoks-china-bytedance-data-concerns (Accessed: January 25, 2023).

[8] *Tiktok insiders say social media company is tightly controlled by Chinese parent ByteDance*, *CNBC*. CNBC. Available at: https://www.cnbc.com/2021/06/25/tiktok-insiders-say-chinese-parent-bytedance-in-control.html (Accessed: January 25, 2023).

14. TikTok and ByteDance have also been sued previously for alleged violations of the Illinois' Biometric Information Privacy Act ("BIPA") and settled in 2022 for $92,000,000.

15. TikTok frequently serves video ads to its users which then include hyperlinks to external websites. When a user clicks on that link, it will take the user to that website, but does not give the user an option to use another browser. As a result, when the user automatically uses the in-app browser, the TikTok app proceeds to use session replay software to record the user's site visit and any subsequent use of the in-app browser.

16. Session replay software is a type of software which is used to record and replay individual user sessions on a website or application. This is done by injecting JavaScript code into the external third-party websites in order to allow the Defendants to surreptitiously view actions that the users are undertaking on the external third-party website. The recordings are based on user actions, including mouse movements, clicks, page views, form submissions and more.[9]

17. For the TikTok in-app browser, Defendants additionally inset JavaScript code into any website the user visits while in the in-app browser and records any information the user inputs on the website and provides to the

---

[9] *Session replay* (2022) *Wikipedia*. Wikimedia Foundation. Available at: https://en.wikipedia.org/wiki/Session_replay (Accessed: January 25, 2023).

Defendants.[10] This data is then intercepted and used by the Defendants to profit off of user information.

18. This information is regularly used by Defendants in order to modify their product as well as sell more advertising and increase revenues. For example, Defendants would be able to view information that a user enters into a payment form or provides contact information to a third-party website, including healthcare providers or other sensitive websites.

19. This type of heavy-handed surveillance of its users is not expected by the average consumer and it is not clear to the user that the TikTok app is recording the users interactions with third-party websites and providing that information to TikTok. The users additionally do not explicitly consent to this surreptitious data gathering.

## CLASS ALLEGATIONS

20. Plaintiff brings these claims on behalf of themselves and of the following classes pursuant to Federal Rule of Civil Procedure 23:

> **National Class: All individuals in the United States who during any applicable statute of limitations period used the TikTok in-app browser to visit websites outside of the app.**
>
> **Illinois Sub-Class: All individuals in Illinois who during any applicable statute of limitations period used the TikTok in-app browser to visit websites outside of the app.**

---

[10] *Felix Krause* (2022) *iOS Privacy: Instagram and Facebook can track anything you do on any website in their in-app browser · Felix Krause*. Available at: https://krausefx.com/blog/ios-privacy-instagram-and-facebook-can-track-anything-you-do-on-any-website-in-their-in-app-browser (Accessed: January 25, 2023).

6

21. Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the class, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

22. Plaintiff may alter the class definitions to conform to developments in the case and discovery.

23. The proposed class meets all requirements under Fed. R. Civ. P. 23.

24. **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all individual plaintiffs would be impracticable. The exact number of members of the Class is presently unknown and can only be ascertained through discovery because that information is exclusively in the possession of Defendant. However, it is reasonable to infer that more than 40 individuals in each class were impacted by the violations at issue in this complaint. Members of the Class can be easily identified through the Defendants' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

25. **Commonality:** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

   a. What actions Defendants took relating to use of Session Reply Softwire within the TikTok app, including what software was used,

how it was configured, and what information was subsequently passed on to the Defendants;

b. Whether Defendants violated the Federal Wiretap Act;

c. Whether Defendants violated the Illinois Eavesdropping Act;

d. What information was received or intercepted between the class members and the Defendants;

e. Whether the interception of this information was undisclosed or unlawful.

f. Whether Defendants had prior and express consent to intercept, review, or receive this information from Plaintiff and the class members.

g. Whether the Defendants obtained a benefit from intercepting the electronic communications at issue;

h. The knowledge and expectations of Plaintiff and the Class Members relating to whether the Defendants would intercept any electronic communications made within the app;

i. Whether the software Defendants used constitutes a device regulated under the Illinois Eavesdropping act; and

j. Whether the Defendants are liable to damages under statute and the type and calculation of those damages.

26. **Typicality**: Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Plaintiff and

all Class Members sustained damages arising out of and caused by the Defendants' common course of conduct in violation of law.

27. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they intend to prosecute this action vigorously. Plaintiff has retained counsel competent and experienced in consumer class actions and complex litigation. The interests of the Class will be fairly and adequately protected by Plaintiff and their counsel and Plaintiff's claims are typical of the claims of the class members.

28. **Superiority:** A class action in this case would be appropriate and superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Defendants, so it would be impracticable for members of the Class to individually seek redress for the Defendant's wrongful conduct. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the judicial system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

29. **Ascertainability:** The class members are easily ascertainable from

the Defendants' records and it would not be difficult to obtain this specific information in Discovery.

30. Defendants have acted or failed to act on grounds that apply generally to the class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

31. Class certification, therefore, is appropriate pursuant to Rule 23 because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## **COUNT I– FEDERAL WIRETAP ACT, 18 U.S.C. §§ 2511, ET SEQ.**
### **(ON BEHALF OF PLAINTIFF AND THE NATIONAL CLASS)**

32. Plaintiff re-alleges the preceding paragraphs as is set forth fully in this Count.

33. The Federal Wire Tap Act, 18 U.S.C. §§ 2511, et seq., prohibits intentionally intercepting, attempting to intercept, or otherwise procuring any person to intercept any wire, oral, or electronic communications, and provides a private right to action to enforce the law.

34. Upon information and belief, Defendants have intentionally intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Plaintiff's and Class members' wire or electronic communications in violation of 18 U.S.C. § 2511(1)(a).

35. Upon information and belief, Defendants have intentionally disclosed, or endeavored to disclose, to another person the contents of Plaintiff's and Class members' wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of 18 U.S.C. § 2511(1)(c).

36. Upon information and belief, Defendants have intentionally used, or endeavored to use, the contents of Plaintiff's and Class members' wire or electronic communications, while knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. § 2511(1)(d).

37. Defendants did not notify Plaintiff or Class members of the above-described intentional interception, disclosure, and/or use of their wire or electronic communications. Additionally, Plaintiffs and Class members did not consent to such interception, disclosure, and or use.

38. Upon information and belief, Defendants are currently engaged in and will continue to engage in the above-described intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications, and therefore, are entitled to and do seek injunctive relief prohibiting Defendants and their agents from violating provisions of the Federal Wiretap Act in the future.

39. As a result of Defendants' intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications in violation of 18 U.S.C. § 2511 et seq., Plaintiff and each Class member are entitled to actual

11

damages or statutory damages $100 per day or whichever is greater, for each day of violation or $10,000, as well as punitive damages and an award of attorneys' fees and costs, pursuant to 18 U.S.C. § 2520.

**COUNT II– ILLINOIS EAVESDROPPING ACT, ILCS 720 § 5/14-1, ET SEQ.**

**(ON BEHALF OF PLAINTIFF AND THE ILLINOIS SUBCLASS)**

40. Plaintiff re-alleges the preceding paragraphs as is set forth fully in this Count.

41. 720 Ill. Comp. Stat. Ann. 5/14-2 provides, in relevant part, that:

**(a) A person commits eavesdropping when he or she knowingly and intentionally:**

**\*\*\*\***

**(3) Intercepts, records, or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication….**

**\*\*\*\***

**(5) Uses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.**

42. Upon information and belief, the Defendants have knowingly and intentionally intercepted, recorded or transcribed, in a surreptitious manner, Plaintiff's and Class members' private electronic communications, without consent, in violation of 720 Ill. Comp. Stat. Ann. 5/14-2(1).

43. Upon information and belief, Defendants have used or disclosed information which it knows or reasonably should know was obtained from a private electronic communication in violation of 720 Ill. Comp. Stat. Ann. 5/14-1 et seq.

44. Defendants did not notify Plaintiff or Class members of the above-described intentional interception, disclosure, and/or use of their wire or electronic communications, nor did Plaintiff or Class members consent to such interception, disclosure, and or use.

45. Upon information and belief, Defendants are currently engaged in and will continue to engage in the above-described intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications, and therefore, are entitled to and do seek injunctive relief prohibiting the Defendants from violating provisions of the Illinois Eavesdropping Act in the future.

46. As a result of the Defendants intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications in violation of 720 Ill. Comp. Stat. Ann. 5/14-1 et seq., Plaintiff and each Class member are entitled to an injunction by this Court, actual damages as a result of the violations, and punitive damages, pursuant to 720 Ill. Comp. Stat. Ann. 5/14-6.

WHEREFORE, Plaintiff asks that the Court enter judgment in Plaintiff's favor and against the Defendants as follows:

    A. Injunctive relief prohibiting such violations of the Federal Wiretap Act and Illinois Eavesdropping Act by the Defendants in the future;

    B. A judgment in favor of Plaintiff and the Class awarding them

appropriate monetary relief, including actual damages, punitive damages, attorney fees, expenses, and costs;

      C.    Damages of $100 per day of violation or $10,000, whichever is greater, in statutory damages for each and every violation of the Wiretap Act;

      D.    An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

      E.    An order certifying this action as a class action under Federal Rules of Civil Procedure 23, establishing an appropriate Class (and any subclasses the Court deems appropriate), defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

      F.    Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By:   /s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys

Bryan Paul Thompson
Robert W. Harrer
CHICAGO CONSUMER LAW CENTER, P.C.
33 N. Dearborn St., Suite 400
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them.

These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys
